MARIE AGNES SMITH, T/A SMITTY'S TAVERN, APPEL-
LANT, v. JOHN BOSCO AND PATSY BOSCO, JERSEY
CITY TAVERN OWNERS ASSOCIATION AND MUNIC-
IPAL BOARD OF ALCOHOLIC BEVERAGE CONTROL
OF THE CITY OF JERSEY CITY, AND DIVISION OF
ALCOHOLIC BEVERAGE CONTROL, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued February 20, 1961—Decided March 9, 1961.

Before Judges CONFORD, FREUND and KILKENNY.

*Mr. John J. Corcoran, Jr.* argued the cause for appellant.

*Mr. James F. McGovern, Jr.* argued the cause for respondents, John Bosco and Patsy Bosco and Jersey City Tavern Owners Association.

The opinion of the court was delivered by

FREUND, J. A. D. ▮ This appeal raises the issue of whether economic hardship, brought about by inability to operate the licensed premises profitably, is a legally sufficient basis for permitting transfer of a plenary retail consumption license under a Jersey City ordinance limiting such permission, if involving transfer to within 750 feet of other licensed premises, to cases where the licensee "shall be compelled to vacate for any reason * * * not caused by any action" on its part. The Municipal Board of Alcoholic Beverage Control of the City of Jersey City had granted the application to transfer, but its decision was reversed on appeal by the State Division of Alcoholic Beverage Control, the Director adopting *in toto* the conclusion of his hearing officer. The present appeal is from the Director's order.

Appellant, Marie Smith, t/a Smitty's Tavern, made application on April 18, 1960 for a transfer of her license from 220 Newark Avenue to 577 Jersey Avenue, Jersey City. The latter property being situated within 500 feet of the

licensed premises, but within 750 feet of the licensed premises of the respondent Bosco, appellant sought to come under one of the exceptions contained in section 4 of the applicable city ordinance, the relevant portion of which reads as follows:

"Section 4. From and after the passage of this ordinance, no Plenary Retail Consumption License shall be granted for or transferred to any premises, the entrance of which is within the area of a circle having a radius of seven hundred fifty ('750) feet and having as its central point the entrance of an existing licensed premises covered by a Plenary Retail Consumption License, provided, however, that if any licensee holding a Plenary Retail Consumption License, shall be compelled to vacate the licensed premises for any reason that in the opinion of the Municipal Board of Alcoholic Beverage Control was not caused by any action on the part of the licensee, or if the landlord of said licensed premises shall consent to a vacation thereof, said licensee may, in the discretion of the Municipal Board of Alcoholic Beverage Control, be permitted to have such license transferred to another premises within a radius of five hundred (500) feet of the licensed premises so vacated."

At the hearing before the Jersey City board, appellant's application was opposed by respondent Bosco and by respondent Jersey City Tavern Owners Association. The evidence adduced and facts stipulated established that appellant had been a tenant in the licensed premises at 220 Newark Avenue under a two-year lease from May 1, 1958 to April 30, 1960, at a monthly rental of $200, with option to renew for an additional two years at a rent to be negotiated; that at the expiration of the lease, she had continued as a monthly tenant at the same rental rate for the month of May 1960, but had given the landlord notice of intention to vacate on June 1, 1960; that the rent for the premises at 577 Jersey Avenue would be $75 per month for the first year and $100 per month thereafter; that she wants the license transferred "because we are losing money"; and that her reason, therefore, for seeking to relocate the license is "purely an economic one."

By resolution filed May 3, 1960, the municipal board granted appellant's application to transfer on the ground

that she had "conformed with all requirements as set forth in Section No. 4" of the ordinance.

On respondent's appeal to the Division, the case was submitted to the hearer on the transcript below and the additional testimony of Louis Guss, owner of the premises at 220 Newark Avenue. Guss testified that he had offered to renew appellant's lease at the existing rental of $200 a month, and that although a provision for $20 a month additional to cover water and sewerage charges would be continued in the new lease, he would, as previously, waive the payment of that charge. He further said that he "did everything in our power" to keep the appellant as a tenant, including "offering to give them some consideration in the rent and fix up the place and make some improvements * * *." The hearer determined in his report that:

"It is perfectly clear that the respondent-licensee's inability to operate the licensed business profitably cannot form the basis of a finding that thereby the licensee was compelled to vacate for any reason not caused by any action on the part of the licensee. The entire design of the distance-between-premises ordinance would be set for naught if the licensee could transfer his license anywhere within 500 feet of his licensed premises merely on the basis that he could do better business at the new location."

Appellant's argument on this appeal is two-fold. She claims, first, that her landlord's insistence on maintaining the $200 monthly rental and $20 water charge is, in the light of changed neighborhood conditions reducing the possible value of the licensed premises, tantamount to raising the rent exorbitantly and therefore a disguised variety of compulsory vacation of the premises. Alternatively, she urges that inability to operate at a profit constitutes sufficient hardship to bring a licensee within the local board's discretionary power to grant exceptions under Section 4.

The ordinance under consideration has been before this court on prior occasions. In *Tube Bar, Inc. v. Commuters Bar, Inc.,* 18 *N. J. Super.* 351 (*App. Div.* 1952), the court, as an alternate ground of decision, held that a licensee whose

lease had two years and five months to run, who had never been given any notice to terminate, and who was not imminently exposed to a lease renewal conditioned on an "exorbitant increase in the rental," or to any other action amounting to compulsion, was not entitled to be excepted from the distance requirements of the ordinance. *Dal Roth, Inc. v. Division of Alcoholic Beverage Control,* 28 *N. J. Super.* 246 (*App. Div.* 1953), held that the benefit of the transfer restriction exceptions in section 4 extended only to existing licensees and did not embrace an applicant for the license of one who had previously gone out of business and had no premises to vacate. The court there indicated, at *page* 254, in language with which we are entirely in accord, that the alleviating provisions in the ordinance, inserted in fairness to licensees and not by statutory compulsion, should be strictly construed, in conformance with the public policy behind *R. S.* 33:1–40, enabling local governing bodies to limit the number of retail liquor outlets within their jurisdiction.

With respect to appellant's initial contention, the record is devoid of evidence from which it might reasonably be inferred that her landlord's rent demand was exorbitant. In her exceptions to the hearer's report appellant charges that depreciation of the neighborhood and the exodus of former customers have created a situation in which a rental of $200 per month is unreasonable; however, no evidence of comparable rentals or land values in the neighborhood was received. While there might be circumstances in which a landlord's insistence on maintaining past rentals, in the face of depressed local conditions, could arguably be characterized as an "exorbitant" demand and possibly be held grounds for granting the licensee a transfer, no such situation has been presented by appellant in her proofs.

Turning to the appellant's second point, we are in agreement with the Director that vacation of the premises because of inability to operate the enterprise profitably is not the type of external compulsion, unrelated to "any action on the

part of the licensee," which is contemplated by the ordinance as a basis for waiving the distance restrictions. To hold otherwise would invite temporary manipulation of management in order to achieve the desired level of loss warranting a transfer to ultimately more profitable business locations; would introduce into license transfer proceedings the complex and subjective issues of what constitutes an adequate return and whether the allegedly meager return of the applicant has been caused by his own mismanagement or by external economic conditions; and would generally encourage personal efforts on the part of licensees to subvert and undermine the policy supporting the distance regulations—the spacing of drinking establishments in a pattern consistent with the public interest.

Our conclusions herein were foreshadowed by and implicit in *Dal Roth, Inc. v. Division of Alcoholic Beverage Control, supra,* where the licensee was adjudicated insolvent and its license was sold through a receiver. The court distinguished vacation by external compulsion from that brought about by internal financial disaster, noting that "if the licensee is forced to vacate, the policy behind the ordinance and the law pursuant to which it was adopted will be relaxed to take care of his hardship, but if he is forced not only to vacate but also to sell, no aid can be extended to him." (at *page 255*)

It is elementary that concern for the licensee's own financial misfortunes will not be elevated above the public interest. *Cf. Hudson Bergen County Retail Liquor Stores Ass'n v. Board of Com'rs of Hoboken,* 135 *N. J. L.* 502, 510 (*E. & A.* 1947). Administrative efforts to accommodate individual licensees must be accomplished within the framework of the existing legislation, construed in terms of the overriding public policy. So viewed, appellant's application and reasons therefor were properly held by the Director to be outside the scope of the relief clause of Section 4 of the ordinance. It would hardly further the salutary principle of keeping "the door of the escape clause as nearly shut as possible,"

*Dal Roth, Inc. v. Division of Alcoholic Beverage Control,* *supra,* at *pp.* 254.–255, to provide every economically dissatisfied licensee with a potentially powerful opening wedge.

Affirmed.